UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
CASE NO. 0:25-cv-62359-AHS

BAUDELAIRE MORANCY,
LARRY MARTINEZ,
LIVIU VIOREL IONITA,
MOHAMMED LAKHSASSI,
DORREL MAURICE AARONS,
and JAMES BEEN, individually and on
behalf of all others similarly situated,

Plaintiffs,

v.

CURIO EMPLOYER LLC
d/b/a STARWOOD,
HILTON EMPLOYER INC.,
PABLO GAMBOA, individually, and
ROBERTO BUCCIERO, individually,
Defendants.
_____________________________________________/

**AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiffs, BAUDELAIRE MORANCY ("Morancy"), LARRY MARTINEZ ("Martinez"), LIVIU VIOREL IONITA ("Ionita"), MOHAMMED LAKHSASSI ("Lakhsassi"), DORREL MAURICE AARONS ("Aarons"), and JAMES BEEN ("Been") (collectively, "Plaintiffs"), individually, on behalf of all others similarly situated under 29 U.S.C. § 216(b), and as representatives of a class under Federal Rule of Civil Procedure 23, by and through undersigned counsel, hereby sue Defendants CURIO EMPLOYER LLC d/b/a STARWOOD ("Curio"), HILTON EMPLOYER INC. ("Hilton"), PABLO GAMBOA ("Gamboa"), individually, and ROBERTO BUCCIERO ("Bucciero"), individually (collectively, "Defendants"), and in support state as follows:

## GENERAL ALLEGATIONS

1. This is an action by Plaintiffs for unpaid wages under the Fair Labor Standards Act, 29 U.S.C. §§ 201–219 ("FLSA"), brought as a collective action under 29 U.S.C. § 216(b), for breach of a collective bargaining agreement under Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, and for unpaid service charge distributions under Florida common law, brought as a class action under Federal Rule of Civil Procedure 23(b)(3).

2. This Court has jurisdiction over Plaintiffs' FLSA claims pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. § 1331. This Court has jurisdiction over Plaintiffs' LMRA claim pursuant to 29 U.S.C. § 185 and 28 U.S.C. § 1331. This Court has supplemental jurisdiction over Plaintiffs' state-law claims pursuant to 28 U.S.C. § 1367. This Court has authority to maintain the state-law claims as a class action under Federal Rule of Civil Procedure 23.

3. Plaintiff Baudelaire Morancy was at all times relevant to this action, and continues to be, a resident of Broward County, Florida. Morancy is a covered employee for purposes of the FLSA.

4. Plaintiff Larry Martinez was at all times relevant to this action, and continues to be, a resident of Broward County, Florida. Martinez is a covered employee for purposes of the FLSA.

5. Plaintiff Liviu Viorel Ionita was at all times relevant to this action, and continues to be, a resident of Broward County, Florida. Ionita is a covered employee for purposes of the FLSA.

6. Plaintiff Mohammed Lakhsassi was at all times relevant to this action, and continues to be, a resident of Miami-Dade County, Florida. Lakhsassi is a covered employee for purposes of the FLSA.

7. Plaintiff Dorrel Maurice Aarons was at all times relevant to this action, and continues to be, a resident of Broward County, Florida. Aarons is a covered employee for purposes of the FLSA.

8. Plaintiff James Been was at all times relevant to this action, and upon information and belief, continues to be, a resident of Broward County, Florida. Been is a covered employee for purposes of the FLSA.

9. Defendant Curio Employer LLC d/b/a Starwood is a foreign limited liability company which jointly employed Plaintiffs having its main place of business in Broward County, Florida, where Plaintiffs worked, and at all times material hereto was and is engaged in interstate commerce.

10. Defendant Hilton Employer Inc. is a foreign profit corporation which jointly employed Plaintiffs having its main place of business in Broward County, Florida, where Plaintiffs worked, and at all times material hereto was and is engaged in interstate commerce. Hilton, through its affiliate Signia Hotel Management LLC, assumed the collective bargaining agreement governing Plaintiffs' employment pursuant to a written assumption letter dated November 29, 2022.

11. Defendant Pablo Gamboa is a corporate officer of Curio Employer LLC d/b/a Starwood who exercised operational control over the activities of Curio and Hilton, including control over Plaintiffs' work schedules, compensation, and the financial records

governing the calculation and distribution of service charge payments to banquet staff. Gamboa was an "employer" within the meaning of 29 U.S.C. § 203(d).

12. Defendant Roberto Bucciero is a corporate officer of Curio Employer LLC d/b/a Starwood who exercised operational control over the activities of Curio and Hilton, including control over Plaintiffs' work schedules, compensation, and the financial records governing the calculation and distribution of service charge payments to banquet staff. Bucciero was an "employer" within the meaning of 29 U.S.C. § 203(d).

13. Venue is proper in this District because all of the actions that form the basis of this Amended Complaint occurred within the Southern District of Florida, and payment was due in Broward County.

14. Declaratory, injunctive, legal, and equitable relief is sought pursuant to the laws set forth above, together with attorney's fees, costs, and damages.

15. Upon information and belief, the annual gross revenue of Curio and Hilton was at all times material hereto in excess of $500,000, and by virtue of working in interstate commerce, Defendants satisfy the FLSA's enterprise and individual coverage requirements. 29 U.S.C. §§ 203(r), 203(s).

16. At all times material hereto, Defendants were required to make, keep, and preserve records of the wages, hours, and other conditions and practices of employment of their employees, including Plaintiffs, pursuant to 29 U.S.C. § 211(c) and 29 C.F.R. §§ 516.2 and 516.5.

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

### *Employment Background*

17. Plaintiff Morancy has been employed at the Diplomat Hotel in Hollywood, Broward County, Florida, as a banquet server since February 15, 2002. Plaintiffs Martinez, Ionita, Lakhsassi, Aarons, and Been are current or former banquet department employees at the Diplomat Hotel who performed similar work under the same compensation arrangement.

18. The Diplomat Hotel is a large-scale resort and conference facility that regularly hosts banquet events generating substantial revenue. The hotel charges banquet clients a 25% service fee on each event. Of that 25%, the hotel allocates 14.5% to banquet staff, including servers, bartenders, captains, and on-call workers, as service charge distributions.

### *The Collective Bargaining Agreement and Service Charge Framework*

19. Plaintiffs are covered employees under a Collective Bargaining Agreement ("CBA") between UNITE HERE Local 355 (the "Union") and the operator of the Diplomat Hotel. The CBA was originally executed by Aimbridge Employee Service Corp. and subsequently assumed by Signia Hotel Management LLC, an affiliate of Hilton, pursuant to a written assumption letter dated November 29, 2022. The CBA's term runs through June 30, 2026. A true and correct copy of the CBA is attached hereto as Exhibit "A."

20. Under Appendix B, Section 7 of the CBA, a portion of the mandatory 25% service charge is allocated to banquet staff: 14.5% of the total guest food and beverage check to banquet servers and bartenders (increasing to 14.65% as of January 1, 2025), and 0.75% to house attendants (increasing to 0.85% as of January 1, 2025). This service charge distribution constitutes the principal component of Plaintiffs' compensation.

21. Appendix B, Section 1(a) of the CBA provides that the service charge calculation "shall include in its calculation the total guest food and beverage check." The CBA thus mandates that service charge distributions be calculated on actual event revenue as recorded in the hotel's point-of-sale ("POS") system.

***Service Charges Are Wages Under the FLSA***

22. Under 29 C.F.R. § 531.55(a), the service charge distributions paid to banquet staff at the Diplomat Hotel are not tips. They are wages. The regulation provides that where "negotiations between a hotel and a customer for banquet facilities include amounts for distribution to employees of the hotel, the amounts so distributed are not counted as tips received." The Diplomat Hotel's 14.5% allocation to banquet staff falls squarely within this provision.

23. Under 29 C.F.R. § 531.55(b), when service charges are added to a customer's bill and the employer distributes them to employees, the distributed amounts "may be used in their entirety to satisfy the monetary requirements of the Act." The service charge distributions therefore constitute wages for purposes of both the minimum wage under 29 U.S.C. § 206 and the regular rate calculation under 29 C.F.R. § 778.110.

***Prior Wage Theft Under Starwood***

24. Under previous management (Starwood), a banquet director informed the staff that the company was stealing wages and tips. In response, the Union arranged for an audit that uncovered over $1.5 million in unpaid wages. Starwood denied this figure. The Union ultimately settled for $200,000 without management acknowledgment of wrongdoing.

25. Hilton assumed control of the Diplomat Hotel in 2014 and managed it until the pandemic closure. After reopening, Aimbridge Management operated the property until February 2, 2023. Hilton resumed direct management on February 3, 2023.

26. During the transition from Aimbridge to Hilton in February 2023, Morancy received two paychecks: one from Aimbridge and another from Hilton. For the payroll period of March 5 through 18, 2023, Morancy and all other banquet staff were paid overtime and premium overtime. In subsequent weeks, however, Morancy noticed missing wages for full shifts.

27. Throughout their employment, Plaintiffs regularly worked more than 40 hours per week.

***The Fraud Mechanism: Substitution of POS Reports with Manipulated BEOs***

28. The Diplomat Hotel's point-of-sale ("POS") system generates reports at the terminal level each time a banquet event transaction is processed. These POS reports reflect the actual revenue collected from each event and cannot be edited at the terminal.

29. A Banquet Event Order ("BEO") is a separate document that can be created and edited on a personal computer using spreadsheet software such as Microsoft Excel. BEOs are not generated by the POS system. They are created by management and can be modified to show whatever revenue figure the preparer chooses.

30. The Diplomat Hotel's banquet department systematically replaces POS-generated reports with manually prepared BEOs that understate the actual revenue collected from banquet events. Because the service charge distributions to banquet staff are calculated as 14.5% of reported event revenue, understating the revenue reduces the distributions owed to workers.

31. German Cobo, a Diplomat Hotel employee and union worker with personal knowledge of the hotel's banquet operations, conducted an independent analysis of the company's own internal Employee Audit of banquet department records. That analysis reveals the following evidence of systematic manipulation.

32. During the payroll period of April 2 through April 15, 2023, BEO check numbers in the internal audit ranged from 341648 to 344102, a sequential span of 2,455 numbers. The Employee Audit contained only 437 of those checks. The remaining 2,018 BEO checks are missing from the company's own records.

33. During the payroll period of April 16 through April 29, 2023, BEO check numbers ranged from 342818 to 344675, a sequential span of 1,858 numbers. The Employee Audit contained only 889 of those checks. The remaining 969 BEO checks are missing.

34. In just two payroll periods, nearly 3,000 BEO checks are absent from the company's own internal audit. The numerical gaps in the BEO sequences are not random. They follow a pattern consistent with deliberate exclusion of checks representing events whose revenue the employer sought to conceal.

35. A separate check analysis of March 10–11, 2024 banquet records reveals dozens of missing checks within sequences that should be numerically continuous. For example, checks 356601 through 356603 are present, but check 356604 is missing. Checks 356605 and 356606 are present, but check 356607 is missing. The gaps continue throughout the sequence.

36. By contrast, POS Terminals 356 and 357 at the DP Steakhouse, a restaurant within the same hotel operating on the same POS system, show a perfectly chronological and numerically continuous check sequence with no gaps. The difference is not attributable to

the POS system. It is attributable to human intervention in the banquet department's records.

37. The only explanation for the systematic gaps in the banquet department's check sequences, contrasted with the unbroken sequences from the steakhouse terminals on the same system, is that banquet department management deliberately omitted checks from the Excel-based banquet reports in order to understate event revenue and reduce the service charge distributions owed to employees.

***Impact on Employees***

38. In the week of July 23–29, 2023, Morancy observed that service charge distributions were significantly lower than expected. After reviewing revenue figures, Morancy suspected wage theft and emailed the banquet director and manager, copying coworkers. He received no response.

39. Morancy contacted the U.S. Department of Labor and Hilton's corporate human resources department and informed them he would be filing a wage theft complaint.

40. Following Morancy's complaint, Hilton's finance department uncovered $95,000 in unpaid service charge distributions for that single week. Over 100 employees, including banquet servers, bartenders, on-call staff, captains, and setup crew, received live checks to remedy the shortfall.

41. Morancy received an apology via email from management after his supervisor acknowledged that Morancy was also missing an entire day's pay.

42. The $95,000 discovered for a single week was only one example. Given the Diplomat Hotel's reported annual revenue in excess of $100 million and the 25% service charge,

the total misappropriated service charge distributions are, upon information and belief, in the millions of dollars over the relevant period.

***Chef Station Assignments: Non-Commissioned Work***

43. In addition to serving banquet events, Defendants assigned banquet servers to work "chef stations" at a charge of $195 per station. The company retained the entire $195 fee. Banquet servers assigned to chef stations received no commission or service charge distribution for that work.

44. The effect of these assignments is to reduce the proportion of each server's compensation attributable to commissions. In workweeks where a server spent significant time on chef station assignments, the commission share of total compensation may have fallen below 50%, which would defeat the second element of the § 207(i) exemption for those workweeks.

***Tip Bundling: Voluntary Tips Absorbed into Service Charge Pool***

45. In addition to the mandatory 25% service charge, banquet checks at the Diplomat Hotel reflect that hotel clients frequently paid voluntary tips, or gratuities, to banquet staff on top of the service charge.

46. Under 29 C.F.R. § 531.52, a tip is a sum presented by a customer as a gift or gratuity, in recognition of service. Voluntary tips left by customers on banquet checks are tips within the meaning of the FLSA and belong to the employees. 29 U.S.C. § 203(m).

47. Under 29 C.F.R. § 531.55, mandatory service charges negotiated between the hotel and the customer are not tips. They are wages. Tips and service charges are legally distinct categories under the FLSA, with different rules governing their treatment.

48. Upon information and belief, Defendants bundled voluntary tips left by customers on banquet checks together with the mandatory service charge distributions, treating the combined amount as a single pool. German Cobo's audit conclusions confirm that "the company Hilton bundles gratuities and automatic service charges to lower the liability from the company Hilton from having to pay premium overtime rate."

49. This bundling practice has three consequences. First, it obscures which portion of each employee's compensation consists of tips (which are not commissions) and which portion consists of service charge distributions (which the employer characterizes as commissions for § 207(i) purposes). By commingling the two, Defendants artificially inflate the commission percentage used to claim the § 207(i) exemption, because tips are not commissions and should not be counted toward the 50% threshold.

50. Second, to the extent Defendants retained any portion of the voluntary tips left by customers, or failed to distribute them in full to the employees for whom they were intended, Defendants violated 29 U.S.C. § 203(m), which prohibits employers from keeping tips that belong to employees.

51. Third, the bundling of tips and service charges renders Defendants' regular rate calculation unreliable. Under 29 C.F.R. § 778.217(a), tips are generally excluded from the regular rate. Service charges, by contrast, are included under 29 C.F.R. §§ 778.110 and 531.55. Combining them into a single line item makes it impossible to verify that the regular rate was correctly calculated.

***The CBA Does Not Govern Banquet Overtime***

52. Article 17, Section 10 of the CBA provides that the Hours and Overtime article "does not apply to Banquet Servers." Appendix B, Section 13 further provides that "Banquet

Servers and Bartenders shall be exempt from the overtime provisions of the Collective Bargaining Agreement to the extent permitted by law." These provisions confirm that the CBA does not purport to govern overtime for banquet department employees. Plaintiffs' FLSA overtime claims arise from the statute, not from any CBA right.

***Additional CBA Violations: Porterage and Housekeeper Distributions***

53. The CBA requires Curio and Hilton to pay porterage fees to bellman staff. Curio and Hilton have refused to pay porterage fees as required by the CBA. Additionally, Curio and Hilton have failed to pay housekeepers the gratuity distributions to which they are entitled under the CBA. These failures constitute additional breaches of the CBA and further instances of unpaid compensation.

***Recordkeeping Violations and Willfulness***

54. Defendants were required under 29 U.S.C. § 211(c) and 29 C.F.R. §§ 516.2 and 516.5 to maintain accurate records of the basis on which wages were paid, the total wages paid each pay period, and all additions to or deductions from wages.

55. Defendants failed to maintain accurate records. They systematically replaced POS-generated reports with manipulated BEOs, resulting in records that understate event revenue and understate the service charge distributions paid to employees.

56. Over 3,000 BEO checks are missing from the company's own internal Employee Audit for just two payroll periods. The check sequences show systematic gaps. The company's records are inaccurate, inadequate, and, upon information and belief, deliberately falsified.

57. Defendants' conduct was willful within the meaning of 29 U.S.C. § 255(a). The systematic substitution of POS reports with manipulated BEOs, the disappearance of

nearly 3,000 checks, the documented gaps in the check sequences, and the contrast with the perfectly sequential steakhouse records demonstrate that Defendants knew or showed reckless disregard for whether their conduct violated the FLSA. *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988).

58. Defendants' willfulness is further confirmed by the prior Starwood audit, which uncovered $1.5 million in missing wages at the same hotel for the same type of conduct. Every subsequent operator of the Diplomat Hotel was on notice that the banquet department's compensation records required scrutiny.

59. Defendants did not act in good faith or with reasonable grounds for believing their actions were lawful. The Portal-to-Portal Act defenses under 29 U.S.C. §§ 259 and 260 are unavailable to an employer that systematically falsifies the records on which its employees' wages are calculated.

***Burden-Shifting: Falsified Records***

60. Because Defendants' records are inaccurate and inadequate, Plaintiffs are entitled to the burden-shifting framework of *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687–88 (1946). Plaintiffs will establish the amount and extent of unpaid wages as a matter of just and reasonable inference, based on POS reports, handwritten records, photographs of receipts, the internal Employee Audit data, and testimony from Plaintiffs and similarly situated employees. The burden will then shift to Defendants to produce evidence of the precise amounts owed or to negate the reasonableness of Plaintiffs' inference.

***Exhaustion of the CBA Grievance Procedure Is Excused***

61. Article 32, Section 8 of the CBA provides that the arbitration procedure "may be instituted only by the Union and by no other person, party, or entity." Because the Union

holds the exclusive power to invoke arbitration, Plaintiffs, as individual employees, have no ability to exhaust the CBA's grievance and arbitration procedures. Exhaustion is therefore excused as a matter of law. *Vaca v. Sipes*, 386 U.S. 171, 185 (1967).

62. Even if Plaintiffs could independently invoke arbitration, exhaustion would be futile. The Union has demonstrated a pattern of failing to pursue wage theft claims at the Diplomat Hotel. Under previous management (Starwood), a banquet director informed the staff that the company was stealing wages and tips. The Union arranged for an audit that uncovered over $1.5 million in unpaid wages. Starwood denied the figure. The Union ultimately settled those claims for $200,000, approximately thirteen cents on the dollar, without management acknowledgment of the underlying violations.

63. The Union's pattern of inadequate representation has continued under Hilton. When Plaintiff Morancy discovered the current wage theft scheme in July 2023, he requested an independent audit through the Union. The banquet director provided records going back to October 14, 2023, but the Union failed to take further action on those records. Despite repeated requests for transparency and additional audits, the Union did nothing. A group of employees downloaded the internal Employee Audit data to a USB drive and asked a fellow employee, German Cobo, to analyze it, because the Union refused to act.

64. Plaintiff Morancy also requested that his Union representative, Daisy M., obtain records from October 15, 2023 to the present. The Union representative ignored the request. Plaintiff suspects collusion between the Union and management based on the representative's refusal to pursue the claims and the Union's pattern of settling wage theft claims for a fraction of their value.

65. The Union's prior settlement of $200,000 on a $1.5 million claim, combined with its present refusal to investigate or act on the current wage theft allegations, establishes that pursuit of the CBA's grievance procedures would be futile. An employee is not required to exhaust contractual remedies where, as here, the union has demonstrated that it will not meaningfully pursue the employee's claims. *Vaca v. Sipes*, 386 U.S. at 185; *Glover v. St. Louis-San Francisco Ry. Co.*, 393 U.S. 324, 330 (1969).

**COLLECTIVE ACTION ALLEGATIONS**

66. Plaintiffs bring this action individually and on behalf of all similarly situated employees pursuant to 29 U.S.C. § 216(b).

67. The similarly situated employees include all current and former banquet servers, bartenders, captains, on-call staff, and setup crew employed at the Diplomat Hotel who received service charge distributions calculated on the basis of the hotel's manipulated BEO figures rather than actual POS revenue, at any time within three years prior to the filing of this action.

68. Upon information and belief, the class of similarly situated employees exceeds 100 persons. When Hilton's finance department remedied the $95,000 shortfall for a single week in July 2023, over 100 employees received live checks. The manipulation was not limited to a single week or a single employee. It was a systemic practice affecting the entire banquet department.

69. Plaintiffs Morancy, Martinez, Ionita, Lakhsassi, Aarons, and other banquet department employees have personal knowledge of the manipulation and have reviewed the evidence. Plaintiffs Martinez, Ionita, Lakhsassi, and Aarons have filed consents to join this collective action.

70. Defendants' practice of substituting POS reports with manipulated BEOs was a common policy applied uniformly to the entire banquet department. The claims of the similarly situated employees arise from the same factual and legal circumstances as Plaintiffs' claims.

## RULE 23 CLASS ACTION ALLEGATIONS

71. In addition to the FLSA collective action under § 216(b), Plaintiffs bring Counts VII through XIV as a class action under Federal Rule of Civil Procedure 23(b)(3) on behalf of the following class:

72. All current and former banquet servers, bartenders, captains, on-call staff, and setup crew employed at the Diplomat Beach Resort in Hollywood, Florida, whose service charge distributions were calculated using Banquet Event Orders rather than POS-generated revenue figures, at any time within four years prior to the filing of this action through the date of final judgment or settlement (the "Class").

73. The Class satisfies Fed. R. Civ. P. 23(a)(1) (numerosity). When Hilton's finance department issued corrective checks for a single week in July 2023, over 100 employees received payments. The banquet department employs a large rotating workforce. Joinder of all class members is impracticable.

74. The Class satisfies Fed. R. Civ. P. 23(a)(2) (commonality). Common questions of law and fact include whether Curio and Hilton maintained a policy of replacing POS-generated revenue figures with manipulated BEOs, whether service charge distributions were calculated on the manipulated figures, and whether the BEO figures systematically understated actual event revenue. These questions generate common answers because the policy was applied uniformly to every class member's compensation.

75. The Class satisfies Fed. R. Civ. P. 23(a)(3) (typicality). Plaintiffs' claims arise from the same course of conduct and the same legal theories as those of the class. Plaintiffs worked in the banquet department, their distributions were calculated on manipulated BEOs, and the same is true of every other class member.

76. The Class satisfies Fed. R. Civ. P. 23(a)(4) (adequacy). Plaintiffs will fairly and adequately protect the interests of the class. They have no interests antagonistic to the class and seek the same relief: the difference between distributions paid (based on falsified BEOs) and distributions owed (based on actual POS revenue). Class counsel, Remer, Georges-Pierre & Hoogerwoerd PLLC, has extensive experience litigating wage and hour class and collective actions.

77. The Class satisfies Fed. R. Civ. P. 23(b)(3). Common questions of law and fact predominate over individual questions because the liability determination, whether Curio and Hilton systematically manipulated BEOs to understate revenue, is entirely common. A class action is superior to other methods of adjudication because individual claims may be too small to justify separate litigation, the core liability question would otherwise be re-litigated in each case, and all relevant evidence and witnesses are in this district.

## COUNT I
### *FLSA Overtime Violation, 29 U.S.C. § 207(a) against Curio Employer LLC d/b/a Starwood*

78. Plaintiffs re-allege and incorporate by reference paragraphs 1 through 77 as though fully set forth herein.

79. Section 207(a)(1) of the FLSA provides that no employer shall employ any employee for a workweek longer than 40 hours unless the employee receives overtime compensation at a rate not less than one and one-half times the regular rate at which the employee is employed. 29 U.S.C. § 207(a)(1).

80. Plaintiffs regularly worked more than 40 hours per week during the relevant period.

81. Curio failed to pay Plaintiffs overtime compensation at one and one-half times their regular rate of pay for all hours worked in excess of 40 per workweek.

82. To the extent Curio asserts the § 207(i) commission exemption as a defense, that exemption is narrowly construed and the employer bears the burden of proving all elements. *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392 (1960). Curio cannot carry that burden because its records, on which the exemption's elements depend, are falsified. The BEO revenue figures are manipulated, nearly 3,000 BEO checks are missing from the company's own audit, and the check sequences contain systematic gaps that exist only in the banquet department and not in other departments using the same POS system.

83. Curio further cannot prove the second element of § 207(i), that more than half of each Plaintiff's compensation consisted of commissions, for workweeks in which a Plaintiff was assigned to non-commissioned chef station work at $195 per station, the entire fee for which was retained by the company.

84. Curio's practice of bundling voluntary customer tips with mandatory service charge distributions further undermines the § 207(i) defense. Tips are not commissions. 29 C.F.R. § 531.52. By commingling tips and service charges, Curio artificially inflates the commission percentage. When the voluntary tips are properly excluded from the commission calculation, the commission share of total compensation is lower than the records suggest, and may fall below 50% in specific workweeks.

85. Plaintiffs' regular rate of pay must be calculated to include the full service charge distributions owed based on actual POS revenue, not the falsified BEO figures. 29 C.F.R.

§§ 778.110, 778.117. The overtime premium owed is one and one-half times the correctly calculated regular rate.

86. Curio's violations were willful. Plaintiffs are entitled to the three-year statute of limitations under 29 U.S.C. § 255(a) and to liquidated damages in an equal amount under 29 U.S.C. § 216(b).

87. This claim arises from Plaintiffs' independent statutory rights under the FLSA and does not require interpretation of the CBA.

**WHEREFORE**, Plaintiffs respectfully request that the Court: (a) adjudge and decree that Curio violated the FLSA willfully, intentionally, and with reckless disregard for Plaintiffs' rights; (b) award Plaintiffs actual damages for unpaid overtime compensation, with interest; (c) award Plaintiffs an equal amount in liquidated damages; (d) award Plaintiffs the costs of this action together with reasonable attorney's fees; and (e) grant such other and further relief as the Court deems just and proper.

## COUNT II
### *FLSA Overtime Violation, 29 U.S.C. § 207(a) against Hilton Employer Inc.*

88. Plaintiffs re-allege and incorporate by reference paragraphs 1 through 77 as though fully set forth herein.

89. Hilton failed to pay Plaintiffs overtime compensation at one and one-half times their regular rate of pay for all hours worked in excess of 40 per workweek, as required by 29 U.S.C. § 207(a)(1).

90. For the same reasons set forth in Count I, the § 207(i) exemption is unavailable to Hilton. The falsification of records, the missing BEO checks, the non-commissioned chef station assignments, and the tip bundling preclude Hilton from carrying its burden to prove the exemption's elements. *Arnold v. Ben Kanowsky, Inc.*, 361 U.S. 388, 392 (1960).

91. Plaintiffs' regular rate of pay must be calculated to include the full service charge distributions owed based on actual POS revenue, not the falsified BEO figures. 29 C.F.R. §§ 778.110, 778.117.

92. Hilton's violations were willful. Plaintiffs are entitled to the three-year statute of limitations under 29 U.S.C. § 255(a) and to liquidated damages in an equal amount under 29 U.S.C. § 216(b).

93. This claim arises from Plaintiffs' independent statutory rights under the FLSA and does not require interpretation of the CBA.

**WHEREFORE**, Plaintiffs respectfully request that the Court: (a) adjudge and decree that Hilton violated the FLSA willfully, intentionally, and with reckless disregard for Plaintiffs' rights; (b) award Plaintiffs actual damages for unpaid overtime compensation, with interest; (c) award Plaintiffs an equal amount in liquidated damages; (d) award Plaintiffs the costs of this action together with reasonable attorney's fees; and (e) grant such other and further relief as the Court deems just and proper.

## COUNT III
### *FLSA Overtime Violation, 29 U.S.C. § 207(a) against Pablo Gamboa*

94. Plaintiffs re-allege and incorporate by reference paragraphs 1 through 77 as though fully set forth herein.

95. At all times relevant to this action, Defendant Gamboa was a corporate officer of Curio Employer LLC who exercised operational control over the banquet department, including control over employee work schedules, compensation, and the financial records governing the calculation of service charge distributions.

96. Gamboa was an "employer" within the meaning of 29 U.S.C. § 203(d), in that he acted directly in the interest of the employer in relation to the employees of the employer, including Plaintiffs.

97. Gamboa failed to pay Plaintiffs overtime compensation at one and one-half times their regular rate of pay for all hours worked in excess of 40 per workweek, as required by 29 U.S.C. § 207(a)(1).

98. For the same reasons set forth in Count I, the § 207(i) exemption is unavailable to Gamboa. The falsification of records, the missing BEO checks, and the non-commissioned chef station assignments preclude Gamboa from carrying his burden to prove the exemption's elements.

99. Gamboa's violations were willful. Plaintiffs are entitled to the three-year statute of limitations and to liquidated damages.

100. Gamboa did not act in good faith or with reasonable grounds for believing his conduct was lawful. The defenses under 29 U.S.C. §§ 259 and 260 are unavailable to an individual who participated in the systematic falsification of the records on which employees' wages were calculated.

101. This claim arises from Plaintiffs' independent statutory rights under the FLSA and does not require interpretation of the CBA.

**WHEREFORE**, Plaintiffs respectfully request that the Court: (a) adjudge and decree that Gamboa violated the FLSA willfully, intentionally, and with reckless disregard for Plaintiffs' rights; (b) award Plaintiffs actual damages for unpaid overtime compensation, with interest; (c) award Plaintiffs an equal amount in liquidated damages; (d) award Plaintiffs the costs of this

action together with reasonable attorney's fees; and (e) grant such other and further relief as the Court deems just and proper.

**COUNT IV**
***FLSA Overtime Violation, 29 U.S.C. § 207(a) against Roberto Bucciero***

102. Plaintiffs re-allege and incorporate by reference paragraphs 1 through 77 as though fully set forth herein.

103. At all times relevant to this action, Defendant Bucciero was a corporate officer of Curio Employer LLC who exercised operational control over the banquet department, including control over employee work schedules, compensation, and the financial records governing the calculation of service charge distributions.

104. Bucciero was an "employer" within the meaning of 29 U.S.C. § 203(d), in that he acted directly in the interest of the employer in relation to the employees of the employer, including Plaintiffs.

105. Bucciero failed to pay Plaintiffs overtime compensation at one and one-half times their regular rate of pay for all hours worked in excess of 40 per workweek, as required by 29 U.S.C. § 207(a)(1).

106. For the same reasons set forth in Count I, the § 207(i) exemption is unavailable to Bucciero. The falsification of records, the missing BEO checks, and the non-commissioned chef station assignments preclude Bucciero from carrying his burden to prove the exemption's elements.

107. Bucciero's violations were willful. Plaintiffs are entitled to the three-year statute of limitations and to liquidated damages.

108. Bucciero did not act in good faith or with reasonable grounds for believing his conduct was lawful. The defenses under 29 U.S.C. §§ 259 and 260 are unavailable to an

individual who participated in the systematic falsification of the records on which employees' wages were calculated.

109. This claim arises from Plaintiffs' independent statutory rights under the FLSA and does not require interpretation of the CBA.

**WHEREFORE**, Plaintiffs respectfully request that the Court: (a) adjudge and decree that Bucciero violated the FLSA willfully, intentionally, and with reckless disregard for Plaintiffs' rights; (b) award Plaintiffs actual damages for unpaid overtime compensation, with interest; (c) award Plaintiffs an equal amount in liquidated damages; (d) award Plaintiffs the costs of this action together with reasonable attorney's fees; and (e) grant such other and further relief as the Court deems just and proper.

**COUNT V**
***FLSA Tip Retention Violation, 29 U.S.C. § 203(m)***
***against Curio Employer LLC d/b/a Starwood***

110. Plaintiffs re-allege and incorporate by reference paragraphs 1 through 77 as though fully set forth herein.

111. Section 203(m) of the FLSA prohibits employers from keeping tips received by their employees. Tips are the property of the employee. An employer that retains tips belonging to employees violates the FLSA regardless of whether the employer pays the employee at least the full minimum wage.

112. Banquet checks at the Diplomat Hotel reflect that hotel clients paid voluntary tips to banquet staff in addition to the mandatory 25% service charge. These voluntary tips are tips within the meaning of 29 U.S.C. § 203(m) and 29 C.F.R. § 531.52.

113. Curio bundled voluntary customer tips together with mandatory service charge distributions and failed to separately account for or distribute the voluntary tips to the

employees for whom they were intended. Upon information and belief, Curio retained all or a portion of the voluntary tips left by banquet customers.

114. The § 203(m) tip retention prohibition is not subject to the § 207(i) commission exemption. Section 207(i) exempts only "subsection (a) of this section," the overtime provision. It does not exempt § 203(m). A § 203(m) violation is actionable regardless of whether the § 207(i) exemption otherwise applies.

115. Curio's tip retention was willful. Plaintiffs are entitled to the three-year statute of limitations under 29 U.S.C. § 255(a) and to liquidated damages under 29 U.S.C. § 216(b).

116. This claim arises from Plaintiffs' independent statutory rights under the FLSA and does not require interpretation of the CBA.

**WHEREFORE**, Plaintiffs respectfully request that the Court: (a) adjudge and decree that Curio violated 29 U.S.C. § 203(m) by retaining tips belonging to Plaintiffs and similarly situated employees; (b) award Plaintiffs the full amount of tips retained by Curio, with interest; (c) award Plaintiffs an equal amount in liquidated damages; (d) award Plaintiffs the costs of this action together with reasonable attorney's fees; and (e) grant such other and further relief as the Court deems just and proper.

## COUNT VI
### *FLSA Tip Retention Violation, 29 U.S.C. § 203(m) against Hilton Employer Inc.*

117. Plaintiffs re-allege and incorporate by reference paragraphs 1 through 77 as though fully set forth herein.

118. Hilton bundled voluntary customer tips together with mandatory service charge distributions and failed to separately account for or distribute the voluntary tips to the employees for whom they were intended. Upon information and belief, Hilton retained all or a portion of the voluntary tips left by banquet customers.

119. For the same reasons set forth in Count V, the § 203(m) tip retention prohibition is not subject to the § 207(i) commission exemption. A § 203(m) violation is actionable regardless of whether the § 207(i) exemption otherwise applies.

120. Hilton's tip retention was willful. Plaintiffs are entitled to the three-year statute of limitations under 29 U.S.C. § 255(a) and to liquidated damages under 29 U.S.C. § 216(b).

121. This claim arises from Plaintiffs' independent statutory rights under the FLSA and does not require interpretation of the CBA.

**WHEREFORE**, Plaintiffs respectfully request that the Court: (a) adjudge and decree that Hilton violated 29 U.S.C. § 203(m) by retaining tips belonging to Plaintiffs and similarly situated employees; (b) award Plaintiffs the full amount of tips retained by Hilton, with interest; (c) award Plaintiffs an equal amount in liquidated damages; (d) award Plaintiffs the costs of this action together with reasonable attorney's fees; and (e) grant such other and further relief as the Court deems just and proper.

## COUNT VII

***Breach of the Collective Bargaining Agreement Section 301 of the LMRA, 29 U.S.C. § 185 against Curio Employer LLC d/b/a Starwood (On Behalf of the Class)***

122. Plaintiffs re-allege and incorporate by reference paragraphs 1 through 77 as though fully set forth herein.

123. The CBA between UNITE HERE Local 355 and the operator of the Diplomat Hotel constitutes a "contract between an employer and a labor organization" within the meaning of 29 U.S.C. § 185(a). Defendant Curio, as the employer of record and an affiliate of Signia Hotel Management LLC, is bound by the CBA.

124. Defendant Curio breached Appendix B, Section 1(a) of the CBA by failing to calculate service charge distributions on "the total guest food and beverage check" as required.

Instead, Curio calculated distributions on manipulated Banquet Event Orders that reflected artificially reduced revenue figures.

125. Defendant Curio breached Appendix B, Section 7 of the CBA by failing to distribute 14.5% (and subsequently 14.65%) of the total guest food and beverage check to banquet servers and bartenders. Because the revenue base was artificially depressed, the distributions fell below the contractually required percentages of actual event revenue.

126. Defendant Curio breached Appendix B, Section 17 of the CBA by failing to supply the Union with accurate service charge records, instead providing records reflecting the manipulated BEO figures.

127. Plaintiffs are excused from exhausting the CBA's grievance and arbitration procedures on two independent grounds. First, Article 32, Section 8 of the CBA vests the exclusive power to invoke arbitration in the Union. Plaintiffs, as individual employees, have no ability to invoke the procedure they are accused of failing to exhaust. *Vaca v. Sipes*, 386 U.S. 171, 185 (1967). Second, even if Plaintiffs could invoke arbitration, pursuit of the grievance procedure would be futile. The Union has demonstrated a pattern of failing to pursue wage theft claims at the Diplomat Hotel. Under previous management, the Union settled wage theft claims valued at over $1.5 million for $200,000, approximately thirteen cents on the dollar. The Union has since refused to investigate or act on the current allegations despite repeated requests from Plaintiffs, as more fully set forth in the factual allegations above.

128. As a direct and proximate result of Defendant Curio's breach of the CBA, Plaintiffs suffered damages in the form of unpaid service charge distributions.

**WHEREFORE**, Plaintiffs request that the Court enter judgment against Defendant Curio for: (a) all unpaid service charge distributions owed under the CBA; (b) prejudgment interest; (c) reasonable attorney's fees and costs; and (d) such other relief as the Court deems just and proper.

**COUNT VIII**

***Breach of the Collective Bargaining Agreement Section 301 of the LMRA, 29 U.S.C. § 185 against Hilton Employer Inc. (On Behalf of the Class)***

129. Plaintiffs re-allege and incorporate by reference paragraphs 1 through 77 as though fully set forth herein.

130. Defendant Hilton, through its affiliate Signia Hotel Management LLC, assumed the CBA pursuant to a written assumption letter dated November 29, 2022. Section 4.8.3 of the Management Agreement provides that the Manager has "exclusive authority to negotiate with any labor unions representing the Hotel Personnel" and that "[a]ny collective bargaining agreement or labor contract will be executed by Manager or its Affiliate as the employer." Hilton is therefore bound by the CBA as a signatory or assumed party.

131. Defendant Hilton breached the CBA's service charge distribution provisions, including Appendix B, Sections 1(a), 7, and 17, by establishing, maintaining, and administering through its payroll and compensation systems the practice of calculating service charge distributions on manipulated BEO figures rather than on the total guest food and beverage check as required by the CBA.

132. Plaintiffs are excused from exhausting the CBA's grievance and arbitration procedures on two independent grounds. First, Article 32, Section 8 of the CBA reserves to the Union the exclusive power to invoke arbitration. Plaintiffs cannot exhaust a procedure they have no authority to initiate. *Vaca v. Sipes*, 386 U.S. 171, 185 (1967). Second, pursuit of the grievance procedure would be futile given the Union's demonstrated pattern of failing to pursue wage theft claims at this property. The Union previously

settled claims valued at over $1.5 million for $200,000, and has since refused to investigate or act on the current allegations despite repeated requests from Plaintiffs, as more fully set forth in the factual allegations above.

133. As a direct and proximate result of Defendant Hilton's breach of the CBA, Plaintiffs suffered damages in the form of unpaid service charge distributions.

**WHEREFORE**, Plaintiffs request that the Court enter judgment against Defendant Hilton for: (a) all unpaid service charge distributions owed under the CBA; (b) prejudgment interest; (c) reasonable attorney's fees and costs; and (d) such other relief as the Court deems just and proper.

## COUNT IX

***Breach of Agreement Against Curio Employer LLC d/b/a Starwood (On Behalf of the Class)***

134. Plaintiffs re-allege and incorporate by reference paragraphs 1 through 77 as though fully set forth herein.

135. Plaintiffs bring this Count on behalf of themselves and the Class defined above.

136. This count is pled in the alternative under Federal Rule of Civil Procedure 8(d)(2). In the event the Court determines that the CBA does not govern the specific service charge distribution practices at issue, or that the CBA does not bind Defendant Curio, Plaintiffs are entitled to relief under common law.

137. At all times material hereto, Plaintiffs, the Class members, and Curio were engaged in an agreement whereby banquet department employees would receive, as a material term of their compensation, 14.5% of the revenue generated by banquet events at which they worked, distributed as a service charge.

138. Curio breached this agreement by manipulating BEOs to understate the actual revenue generated by banquet events, thereby reducing the service charge distributions owed to

Plaintiffs and the Class. The breach is not a failure to pay above the FLSA minimum; it is a failure to pay the agreed-upon percentage of actual event revenue.

139. The prior $200,000 settlement with Starwood management addressed a different period of employment under different management. The current claims arise from Curio's independent course of conduct. No accord or satisfaction exists with respect to the current claims.

140. Plaintiffs and the Class suffered damages as a result of Curio's breach, in amounts to be determined at trial.

**WHEREFORE**, Plaintiffs, on behalf of themselves and the Class, seek damages from Curio for breach of agreement, together with pre-judgment interest, costs, and attorney's fees, and any and all other relief that this Court deems just and proper.

## COUNT X

***Breach of Agreement against Hilton Employer Inc. (On Behalf of the Class)***

141. Plaintiffs re-allege and incorporate by reference paragraphs 1 through 77 as though fully set forth herein.

142. Plaintiffs bring this Count on behalf of themselves and the Class defined above.

143. This count is pled in the alternative under Federal Rule of Civil Procedure 8(d)(2). In the event the Court determines that the CBA does not govern the specific service charge distribution practices at issue, or that the CBA does not bind Defendant Hilton, Plaintiffs are entitled to relief under common law.

144. At all times material hereto, Plaintiffs, the Class members, and Hilton were engaged in an agreement whereby banquet department employees would receive, as a material term of their compensation, 14.5% of the revenue generated by banquet events at which they worked, distributed as a service charge.

145. Hilton breached this agreement by manipulating BEOs to understate the actual revenue generated by banquet events, thereby reducing the service charge distributions owed to Plaintiffs and the Class. The breach is not a failure to pay above the FLSA minimum; it is a failure to pay the agreed-upon percentage of actual event revenue.

146. Plaintiffs and the Class suffered damages as a result of Hilton's breach, in amounts to be determined at trial.

**WHEREFORE**, Plaintiffs, on behalf of themselves and the Class, seek damages from Hilton for breach of agreement, together with pre-judgment interest, costs, and attorney's fees, and any and all other relief that this Court deems just and proper.

## COUNT XI
***Quantum Meruit Against Curio Employer LLC d/b/a Starwood (On Behalf of the Class)***

147. Plaintiffs re-allege and incorporate by reference paragraphs 1 through 77 as though fully set forth herein.

148. Plaintiffs bring this Count on behalf of themselves and the Class defined above.

149. This count is pled in the alternative under Federal Rule of Civil Procedure 8(d)(2). In the event the Court determines that the CBA does not govern the specific service charge distribution practices at issue, or that the CBA does not bind Defendant Curio, Plaintiffs are entitled to equitable relief.

150. Plaintiffs and the Class conferred a benefit onto Curio by performing banquet services that generated substantial revenue for the hotel.

151. Curio has knowledge of the services performed and the benefit provided by Plaintiffs and the Class.

152. Curio voluntarily accepted the services performed and provided by Plaintiffs and the Class.

153. Curio retains an inequitable benefit from Plaintiffs and the Class by calculating and distributing service charges based on falsified BEO revenue figures rather than actual POS revenue, thereby compensating Plaintiffs and the Class at rates lower than the reasonable value of their services.

154. Plaintiffs and the Class seek damages under quantum meruit equal to the reasonable value of the services rendered, provided to, and performed for Curio.

**WHEREFORE**, Plaintiffs, on behalf of themselves and the Class, seek a judgment under quantum meruit for damages in the amount of the reasonable value of the services performed and provided for Curio, together with interest and costs, and other damages deemed just by this Court.

## COUNT XII

***Quantum Meruit against Hilton Employer Inc. (On Behalf of the Class)***

155. Plaintiffs re-allege and incorporate by reference paragraphs 1 through 77 as though fully set forth herein.

156. Plaintiffs bring this Count on behalf of themselves and the Class defined above.

157. This count is pled in the alternative under Federal Rule of Civil Procedure 8(d)(2). In the event the Court determines that the CBA does not govern the specific service charge distribution practices at issue, or that the CBA does not bind Defendant Hilton, Plaintiffs are entitled to equitable relief.

158. Plaintiffs and the Class conferred a benefit onto Hilton by performing banquet services that generated substantial revenue for the hotel.

159. Hilton has knowledge of the services performed and the benefit provided by Plaintiffs and the Class.

160. Hilton voluntarily accepted the services performed and provided by Plaintiffs and the Class.

161. Hilton retains an inequitable benefit from Plaintiffs and the Class by calculating and distributing service charges based on falsified BEO revenue figures rather than actual POS revenue, thereby compensating Plaintiffs and the Class at rates lower than the reasonable value of their services.

162. Plaintiffs and the Class seek damages under quantum meruit equal to the reasonable value of the services rendered, provided to, and performed for Hilton.

**WHEREFORE**, Plaintiffs, on behalf of themselves and the Class, seek a judgment under quantum meruit for damages in the amount of the reasonable value of the services performed and provided for Hilton, together with interest and costs, and other damages deemed just by this Court.

**COUNT XIII**

***Unjust Enrichment Against Curio Employer LLC d/b/a Starwood (On Behalf of the Class)***

163. Plaintiffs re-allege and incorporate by reference paragraphs 1 through 77 as though fully set forth herein.

164. Plaintiffs bring this Count on behalf of themselves and the Class defined above.

165. This count is pled in the alternative under Federal Rule of Civil Procedure 8(d)(2). In the event the Court determines that the CBA does not govern the specific service charge distribution practices at issue, or that the CBA does not bind Defendant Curio, Plaintiffs are entitled to equitable relief.

166. Plaintiffs and the Class conferred a benefit upon Curio by performing banquet services for which the hotel charged clients a 25% service fee.

167. Curio has knowledge of the benefit conferred by Plaintiffs, the Class, and the services performed.

168. Curio unjustly enriched itself by retaining the difference between the service charge distributions owed to Plaintiffs and the Class (based on actual POS revenue) and the reduced distributions actually paid (based on falsified BEO figures). Curio retained this difference for its own benefit.

169. It would be inequitable for Curio to retain this benefit without paying Plaintiffs and the Class the full service charge distributions to which they are entitled based on actual event revenue.

**WHEREFORE**, Plaintiffs, on behalf of themselves and the Class, seek a judgment for unjust enrichment against Curio, together with interest, costs, and such other relief as this Court deems just and proper.

## COUNT XIV
### *Unjust Enrichment Against Hilton Employer Inc. (On Behalf of the Class)*

170. Plaintiffs re-allege and incorporate by reference paragraphs 1 through 77 as though fully set forth herein.

171. Plaintiffs bring this Count on behalf of themselves and the Class defined above.

172. This count is pled in the alternative under Federal Rule of Civil Procedure 8(d)(2). In the event the Court determines that the CBA does not govern the specific service charge distribution practices at issue, or that the CBA does not bind Defendant Hilton, Plaintiffs are entitled to equitable relief.

173. Plaintiffs and the Class conferred a benefit upon Hilton by performing banquet services for which the hotel charged clients a 25% service fee.

174. Hilton has knowledge of the benefit conferred by Plaintiffs, the Class, and the services performed.

175. Hilton unjustly enriched itself by retaining the difference between the service charge distributions owed to Plaintiffs and the Class (based on actual POS revenue) and the reduced distributions actually paid (based on falsified BEO figures). Hilton retained this difference for its own benefit.

176. It would be inequitable for Hilton to retain this benefit without paying Plaintiffs and the Class the full service charge distributions to which they are entitled based on actual event revenue.

**WHEREFORE**, Plaintiffs, on behalf of themselves and the Class, seek a judgment for unjust enrichment against Hilton, together with interest, costs, and such other relief as this Court deems just and proper.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully request that this Court:

(a) Award Plaintiffs and all similarly situated employees actual damages for unpaid overtime compensation and unpaid service charge distributions;

(b) Award Plaintiffs liquidated damages in an equal amount under 29 U.S.C. § 216(b);

(c) Enter judgment against Curio and Hilton for all unpaid service charge distributions owed under the CBA;

(d) Award Plaintiffs and the Class damages for breach of agreement, quantum meruit, and unjust enrichment;

(e) Award Plaintiffs pre-judgment and post-judgment interest;

(f) Award Plaintiffs reasonable attorney’s fees and costs pursuant to 29 U.S.C. § 216(b);

(g) Grant such other and further relief as this Court deems just and proper.

**JURY DEMAND**

Plaintiffs demand trial by jury of all issues triable as of right by jury.

Dated: March 9, 2026

Respectfully submitted,

/s/ Peter M. Hoogerwoerd
Peter M. Hoogerwoerd, Esq.
Fla. Bar No.: 0188239
pmh@rgph.law
**REMER, GEORGES-PIERRE, & HOOGERWOERD PLLC**
2745 Ponce de Leon Blvd
Coral Gables, FL 33134
(305) 416-5000

*Counsel for Plaintiffs*